### DANIELSON v. UNITED STATES.
### No. 49787.

United States Court of Claims.

Decided Feb. 5, 1952.

Samuel T. Ansell, Jr., Washington, D. C., Ansell & Ansell, Washington, D. C., of counsel, for plaintiff.

John R. Franklin, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., and LeRoy Southmayd, Jr., Washington, D. C., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This is an action by a Major, United States Army, Retired, to recover the difference between the retired pay of a Major with over 27 years' service, which he contends he is entitled to receive, and the retired pay of a Major with over 21 years' service, which he has received from the period July 1, 1946 to the date judgment may be entered herein.

Plaintiff was appointed a Second Lieutenant, National Army, on September 29, 1917, and First Lieutenant, United States Army, on October 12, 1918. On September 23, 1920, he was appointed First Lieutenant, Regular Army, with rank from July 1, 1920. He was promoted to the rank of Captain on January 27, 1921, and on November 18, 1922, was discharged as a Captain and appointed a First Lieutenant, United States Army. He was again promoted to Captain August 23, 1927, and was retired from active serv-

ice in that grade on July 31, 1935, by reason of physical disability incurred in line of duty under the provisions of Section 1251, Revised Statutes, 10 U.S.C.A. § 933.

The plaintiff remained on inactive duty on the retired list until he was recalled to active duty on June 17, 1941, in the rank of Captain. He served on active duty in the Army continuously from June 17, 1941, until June 30, 1946. On March 1, 1942, he was promoted to the temporary grade of Major, Army of the United States Air Corps. On January 10, 1944, he was promoted to the temporary grade of Major, Army of the United States.

The plaintiff appeared before an Army Retiring Board on December 4, 1945. As a result of its examination of the plaintiff, the Board found that he was permanently incapacitated for active service; that the cause of his incapacity was an incident of service; that the incapacity was a result of an incident of service; that his incapacity originated May 16, 1943; and that he became incapacitated for active service on August 8, 1945. The Board further found that the plaintiff had incurred additional physical disability while serving on active duty in a higher temporary grade within the meaning of Section 4 of the Act of June 29, 1943, '57 Stat. 249, 10 U.S.C.A. § 985c, and that his disability was not less than 30 percent permanent.

The findings of the Retiring Board were approved by order of the Secretary of War on February 25, 1946. In consequence thereof, plaintiff was advanced on the retired list of the Army to the grade of Major, effective February 25, 1946, in accordance with the Act of June 29, 1943, and was ordered to revert to retired status on June 30, 1946. On that date, plaintiff was in receipt of the active-duty pay of a Major with over 27 years' service.

From June 30, 1946, to the present time, plaintiff has remained on the retired list in inactive status and has received the retired pay provided by law for a Major with over 21 years' service, such retired pay having been computed on the basis of plaintiff's *active-duty time* alone and not at the rate of 75 per cent of his active-duty pay of which

he was in receipt at the time of his reversion to the retired list. Such active-duty pay had been computed on the basis of all plaintiff's service, active and inactive. On January 27, 1949, plaintiff submitted to the Finance Officer, United States Army, his claim for the difference between the retired pay of a Major with over 27 years' service and the retired pay of a Major with over 21 years' service. This claim was denied by the Army Finance Officer who found, however, that the claim was parallel to the one in Carroll v. United States, 81 F.Supp. 268, 117 Ct.Cl. 53, decided December 6, 1948. In the Carroll case, plaintiff was an Army officer who had served on active duty prior to November 12, 1918, was later retired for physical disability (1926), recalled to active duty, and while serving in a temporary appointment as a Major, was found to have incurred additional physical disability of not less than 30 percent permanent during and as an incident to such temporary service. Carroll was advanced on the retired list to the grade of Major and in 1945 reverted to such retired list. His active duty pay had been computed on the basis of all time served by him, active and inactive. His retired pay was computed on the basis of the pay of a Major but only counting the time served by plaintiff on active duty. We held that his retired pay should have been computed as provided in the fourth paragraph of Section 15 of the Act of 1942, 37 U.S.C.A. § 115, or at the rate of 75 percent of his active-duty pay at the time of his retirement.

The question presented in this case is the identical question which was before the court in the Carroll case. Defendant has asked the court to reconsider the decision in the Carroll case in the light of certain legislative history not presented to the court in the prior litigation.

The statutes which are applicable to the question in suit are the Pay Readjustment Act of 1942, 56 Stat. 359, as amended by the Act of December 2, 1942, '56 Stat. 1037, and the Act of June 29, 1943, 57 Stat. 249, 37 U.S.C.A. § 101 et seq.

Section 4 of the Act of June 29, 1943 provides as follows:

"Any officer of the Regular Army on the retired list who shall have been placed thereon by reason of physical disability shall, if he incurs additional physical disability while serving under a temporary appointment in a higher grade, be promoted on the retired list to such higher grade and receive retired pay computed as otherwise provided by law for officers of such higher grade: *Provided,* That the Secretary of War, or such person or persons as he may designate, shall find that the additional physical disability is incident to service while on active duty in the higher grade and not less than 30 per centum permanent."

There is no dispute that plaintiff meets the requirements of the above quoted Section. In accordance with that Section, plaintiff was promoted on the retired list to the higher grade which he held on active duty under a temporary appointment, i.e., the grade of Major. The parties are also agreed that plaintiff is entitled to "receive retired pay computed as otherwise provided by law for officers of such higher grade," but they disagree as to what law should be applied in computing plaintiff's retired pay. It is plaintiff's contention that the fourth and last paragraph of Section 15 of the Pay Readjustment Act of 1942, supra, is applicable in computing his retired pay. That paragraph reads as follows: "The retired pay of any officer of any of the services mentioned in the title of this Act who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law, shall, unless such officer is entitled to retired pay of a higher grade, be 75 per centum of his active duty pay at the time of his retirement."

Plaintiff had served as a member of the military forces of the United States prior to November 12, 1918; he was ordered to revert to the retired list in 1946 because of service-incurred disability, and at the time of his reversion to the retired list, his active-duty pay was that of a Major with 27 years of service.

Defendant concedes that plaintiff was entitled to the active-duty pay of a Major with 27 years' service (of which only 21 years represented active-duty service) at the time of his reversion to the retired list, but contends that he was not entitled to receive retired pay computed at the rate of 75 percent of such active-duty pay because he was not "hereafter retired" within the meaning of paragraph 4 of Section 15. Defendant points out that plaintiff was retired for service-connected disability in 1935 and was then placed on the retired list; that although plaintiff was recalled to active duty in 1941, his name was never removed from the retired list and that therefore he cannot be considered as having been "hereafter retired" despite the Retirement Board procedure in 1945 and plaintiff's reversion to inactive status on the retired list in 1946. Accordingly, defendant concludes that plaintiff's retired pay was properly computed in accordance with the second paragraph of Section 15 giving him credit only for active-duty time of 21 years. Paragraph 2 of Section 15, 34 U.S.C.A. § 350c(b), provides as follows: "In the computation of the retired pay of officers heretofore or hereafter retired with pay at the rate of $2\frac{1}{2}$, 3, or 4 per centum of the active duty pay received by them at the time of retirement multiplied by the number of years of service for which entitled to credit in the computation of their pay on the active list, not to exceed a total of 75 per centum of said active duty pay, active duty performed by such retired officers subsequent to the date of their retirement shall be counted for the purpose of computing percentage rates and increases with respect to their retired pay. The increases shall be at the rate of $2\frac{1}{2}$, 3, or 4 per centum for each year of active duty and a fractional year of six months or more shall be considered a full year in computing the number of years: *Provided,* That the increased retired pay of such retired officers shall in no case exceed 75 per centum of the active duty pay as authorized by existing law."

It is plaintiff's position that his promotion in 1946 to the grade of Major on the retired list by virtue of incurring additional physical disability while serving on active duty under a temporary appointment in such grade, and his reversion to inactive status on the retired list because of such disabil-

ity, amounted to a *re-retirement*. Plaintiff contends that such re-retirement subsequent to the passage of the Pay Readjustment Act of 1942 brings him within the pay provisions of the last paragraph of Section 15 of the 1942 Act inasmuch as he served in the military forces of the United States prior to November 12, 1918. In support of this contention plaintiff refers, as did plaintiff's counsel in the Carroll case, to the Act of July 24, 1941, 55 Stat. 603, 34 U.S.C.A. § 350 et seq., which made a similar provision for retired Navy officers incurring additional disability while serving in a temporary appointment, as follows:

"Sec. 8(c) An officer of the retired list of the Regular Navy or Marine Corps who was placed thereon by reason of physical disability shall, if he incurs physical disability while serving under a temporary appointment in a higher rank, subject to the provisions of subsection (e) hereof, be advanced on the retired list to such higher rank with retired pay at the rate of 75 per centum of the active-duty pay to which he was entitled while serving in that rank.

\*　　\*　　\*　　\*　　\*　　\*

"Sec. 8(e) The benefits of this section shall apply only to an individual who incurs physical disability in line of duty in time of war or national emergency. In the case of those officers to whom subsection (c) hereof is applicable retirement in the next higher rank shall be effected upon a finding by a naval retiring board that the disability was incident to the service while on active duty in the higher rank and upon a rating by such board, in accordance with regulations prescribed by the Secretary of the Navy, at not less than 30 per centum permanent disability. In all other cases officers shall be retired in accordance with existing law providing for the retirement of officers."

In House Report 606, May 22, 1941 (77th Cong., 1st Sess.) the House Committee on Naval Affairs had the following to say (p. 5): "Another situation involving retired officers confronts the Congress and the Navy Department. There are many officers on the retired list by reason of physical disability who are nevertheless capable of performing limited duties in what the Navy Department terms 'spot assignments.' At the present time all such officers are on shore duty, but the time may come when their services will be needed at sea, or in fighting units elsewhere, and this bill permits their temporary promotion. The Committee is unanimously of the opinion that should one of these officers be injured in line of duty in his higher temporary rank to the extent that he can no longer perform his duties, he should be re-retired in that rank and receive retired pay based on the pay of the higher rank \* \* \*."

Plaintiff further points out that when Congress was considering the Act of June 29, 1943, Senator Walsh, Chairman, Committee on Naval Affairs, asked Senator Reynolds, Chairman, Committee on Military Affairs, whether the bill under discussion would make the same provision for Army officers as was then applicable to Navy officers, and Senator Reynolds replied in the affirmative. A similar colloquy took place in the House of Representatives.[1]

As passed, Section 4 of the Act of June 29, 1943, relative to Army officers, and Section 8(c) of the 1941 Act for naval officers, were not identical in terms. The principal value of the legislative history referred to by plaintiff lies in the fact that it shows that Congress considered a reversion to the retired list, following temporary active duty, a sort of second, or re-retirement, which deserved some special reward. The right of a naval officer to increased retired pay because of his reversion to the retired list for additional physical disability, is clear and has been upheld by the Comptroller General. 23 Comp.Gen. 59.

1. Vol. 89, Cong.Rec., Part V, 78th Cong., 1st Sess., p. 6188, June 21, 1943: "Mr. Cole of N. Y. [Member of the Committee on Naval Affairs]: Is it not correct that this bill extends to various components of the Army the same privileges as are now enjoyed by naval officers?" "Mr. Sparkman [Member of the Committee on Military Affairs and author of House Report 529 on the Act of June 29, 1943]: That is correct. Naval officers already enjoy these benefits, exactly."

In support of its contention that "hereafter retired" as used in Section 15 of the Act of 1942, means retired for the first time, defendant refers to debates in the House of Representatives (88 Cong.Rec., p. 4126) relative to an amendment offered which contained language similar to that in paragraph 4 of Section 15 as finally enacted:

"Mr. Maas. Mr. Chairman, I offer an amendment, which I send to the Clerk's desk."

The Clerk read as follows:

"Amendment offered by Mr. Maas: On page 55, after line 22, add a new paragraph as follows:

"The retired pay of any officer of the Navy, Marine Corps, or Coast Guard who served in any capacity as a member of the Military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law shall, unless such officer is entitled to retired pay of a higher grade, be 75 percent of his active-duty pay at the time of his retirement."

\*       \*       \*       \*       \*       \*

"I am now offering an amendment which will not affect the retired pay of anybody now on the retired list, but will simply bring the Navy into conformity with the existing law covering the Army.

"It has been repeatedly stated that the Army and Navy should be treated alike. The pay bill is supposed to be one pay bill for all alike. All services should come under one system of pay, but unfortunately a specific provision was passed for World War officers in the Army and did not include the Navy or Marine Corps.

"Mr. Harness. Will the gentleman yield?

"Mr. Maas. I yield to the gentleman from Indiana.

"Mr. Harness. Did I understand the gentleman to say that this will not affect any retired naval officers?

"Mr. Maas. On the retired list at present.

"Mr. Harness. All the retired naval officers on the retired list now draw 75 percent.

"Mr. Maas. Oh, no; the gentleman is mistaken. We have a great many World War officers and other officers who are drawing only 2½ percent multiplied by the number of years served.

"Mr. Harness. The gentleman's amendment would increase them to 75 percent?

"Mr. Maas. The amendment would not affect them at all. All my amendment does is to enact for the Navy the existing law for the Army, which is that any World War officer in the Navy who may hereafter be retired shall be retired on 75 percent of his pay, which is existing law for the Army.

"Mr. Vinson, of Georgia. Will the gentleman yield?

"Mr. Maas. I yield to the gentleman from Georgia.

"Mr. Vinson, of Georgia. The effect of the gentleman's amendment would be to carry out for the Navy what was provided in the act of June 13, 1940, for the Army?[2]

"Mr. Maas. Yes; and it should have been done for the Navy at that time, but unfortunately it was not. I think it is the sense of the House and the Congress that the same laws on pay shall apply to both the Army and the Navy, as well as to the Coast Guard and Marine Corps. All I am asking is that existing law for the Army be extended to the Navy and Marine Corps.

"Mr. Harness. The effect of the gentleman's amendment would be to increase the pay of the retired naval officers who are now drawing less than 75 percent of their pay?

"Mr. Maas. No; it will not affect any retired officer now on the retired list. The amendment says, 'hereafter.'

"Mr. May. Will the gentleman yield?

"Mr. Maas. I yield to the gentleman from Kentucky.

"Mr. May. It will affect those who are hereafter retired and put them on an increased basis over what they are now getting?

2.   54 Stat. 379, § 3, p. 380, 10 U.S.C.A. §§ 943a, 971b.

"Mr. Maas. It will put them on exactly the same basis as the Army, and the gentleman sponsored that bill. It will accord to naval officers who have served in the World War and who are retired hereafter the same benefits they would get if they were Army officers and were retired hereafter.

"Mr. May. Does the gentleman know how much the increase will be? Let us take a particular rank, for instance, a commander in the Navy. How much increase would there be for him if he is retired on the basis of 75 percent?

"Mr. Maas. A commander who is forced to retire on account of failure to be selected would have had at least 27 years' service. He would get 27 times 2½ percent. If he is retired under this provision, he will get 30 times 2½ percent. It is not a large increase, a few dollars a month, but it would put him on a parity with a lieutenant colonel in the Army who is retired under similar circumstances."

The amendment under discussion above related only to Navy, Marine Corps and Coast Guard officers, and was not included in the bill as passed. Paragraph 4 of Section 15 which was in the bill as passed, covered any officer of any of the services covered by the Act. The defendant has called the court's attention to the discussion in the House merely for the purpose of showing what was meant by the expression "hereafter retired" used in the provision then under discussion and also in the provision ultimately enacted. Assuming that the discussion, insofar as it relates to the use of the expression "hereafter retired," is pertinent with regard to the provision actually included in the law, we cannot agree with the interpretation contended for by defendant. Our reading of the debate persuades us that Congress was unwilling to provide an increase in retired pay for officers who were on inactive status on the retired list *and drawing retired pay*. There is no indication that Congress did not intend to provide an increase in the retired pay of officers who were not drawing retired pay because they had been recalled to active duty and were then drawing active-duty pay. Such officers were then "retired" only in a technical sense and were not then drawing retired pay. The debates relative to the third paragraph of Section 15 throw some light on the matter. That paragraph provided that an officer "heretofore retired under the provisions of section 24b, National Defense Act, June 3, 1916, as amended, who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, shall be 75 per centum of his active-duty pay". A small group of officers was covered by this provision and certain members of Congress were strongly opposed to any provision which would increase the retired pay of these men who, because of the nature of their retirement, had not been and would never be recalled to active duty. They indicated that they would have no objection to increase in the retired pay of World War I retired officers who were recalled to active duty and later returned to inactive status on the retired list.

Unfortunately, there was no debate of a revealing nature on paragraph 4 of Section 15 as finally enacted. On the basis of the language of the Section itself, the debates on paragraph 3 and on the earlier version of paragraph 4, we think the term "hereafter retired" meant not only officers retired for the first time subsequent to 1942, but also officers previously retired who were recalled to active duty and, after serving on active duty, were returned to inactive status on the retired list subsequent to 1942.

Accordingly, we conclude as we did in the Carroll case that plaintiff herein is entitled to retired pay computed at 75 percent of his active-duty pay at the time of his retirement which was based on the grade of a Major with over 27 years' service, active and inactive. The parties have stipulated that the difference between the retired pay of a Major with over 21 years' service (plaintiff's retired pay has been computed on this basis since July 1, 1946) and the retired pay of a Major with over 27 years' service amounts to $70.47 a month.

Judgment will be entered for plaintiff in the amount of $4,732.23, representing $70.47 a month for the period from July 1, 1946 to the date of the judgment herein.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.