Richard L. JONES

v.

UNITED STATES.

No. 300–56.

United States Court of Claims.

Oct. 5, 1960.

Fred W. Shields, Washington, D. C., for plaintiff. King & King, Washington, D. C., were on the briefs.

Edgar H. Twine, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

DURFEE, Judge.

In this action, plaintiff seeks to recover the difference between the retired pay he is receiving which is computed under statutes applicable to permanent enlisted men but based on the pay of a lieutenant commander, his highest temporary rank, and retired pay computed in accordance with paragraph 4, section 15, of the Pay Readjustment Act of 1942, 56 Stat. 359, 368, 37 U.S.C.A. § 115, for the period beginning July 13, 1950. The parties have stipulated the facts which are, in substance, as follows: plaintiff served as an enlisted member of the Navy prior to November 12, 1918. After a period of active duty and service in the Fleet Naval Reserve, on July 1, 1939, he was placed on the retired list of the Navy as a chief quartermaster, permanent appointment, pursuant to the provisions of section 203 and 204 * of the Naval Reserve Act of June 25, 1938, 52 Stat. 1175, 1178, 1179.

He was recalled to active duty in 1942 and received successive temporary appointments to lieutenant commander. On his release from active duty on October 3, 1946, he reverted to his permanent enlisted grade and was advanced to lieutenant commander on the retired list. A determination by the Secretary of the Navy that the highest rank in which plaintiff had satisfactorily served was lieutenant commander was dated February 3, 1947.

All of plaintiff's officer appointments were made under the authority of the Temporary Promotions Act of July 24,

* Now 10 U.S.C.A. §§ 6330, 6331.

1941, 55 Stat. 603.** When plaintiff was returned to the retired list in October 1946 he began to receive retired pay prescribed by the Naval Reserve Act of 1938, supra, with lieutenant commander as his basic pay grade. After enactment of the Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. § 231 et seq., his retired pay was computed in accordance with the rate provided in section 511 of that Act, which section can be applied to any retired member whether he be an enlisted man or an officer.

Paragraph 4, section 15 of the Pay Readjustment Act of 1942, supra, which plaintiff claims is applicable to him, provides:

"The retired pay of any officer of any of the services mentioned in the title of this Act who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law, shall, unless such officer is entitled to retired pay of a higher grade, be 75 per centum of his active duty pay at the time of his retirement."

Plaintiff's position is that he is entitled to be paid at the rate prescribed in paragraph 4, section 15, supra, since he served in the Navy prior to November 12, 1918, and is an officer "hereafter retired" within the meaning of the statute. He maintains that the legislative history of section 8(a) of the Act of February 21, 1946, 60 Stat. 26, 28 [1] which amended the Temporary Promotions Act of 1941, supra, indicates that it was the intention of Congress that temporary officers like himself should receive the same retirement rights as permanent officers who served temporarily in higher grades. Plaintiff also asks us to decide the total number of years of creditable service for pay purposes in the event that his theory of recovery is held to be applicable. The gist of the Government's counter argument is that plaintiff is not a retired officer and, hence, cannot bring himself within the purview of the provisions of the Pay Readjustment Act; plaintiff's temporary officer service is fully recognized, the defendant insists, in the rate of retired pay which was and is applied to him.

Plaintiff is one of that group of men who was retired from military service prior to World War II, recalled to active duty during the war, and released subsequent to the passage of various pieces of legislation pertaining to the retirement and pay of military personnel, such as the Pay Readjustment Act of 1942. This court first recognized that such personnel ought to be considered as having "re-retired" after the completion of their wartime service in Carroll v. United States, 1948, 81 F.Supp. 268, 117 Ct.Cl. 53. In that case the plaintiff, a retired regular Army officer, claimed the benefit of paragraph 4, section 15 of the 1942 Act. We have reiterated the Carroll holding in a number of cases involving re-retired officers. Danielson v. United States, 1952, 102 F.Supp. 575, 121 Ct.Cl. 533; Sherfey v. United States, 1958, 157 F.Supp. 936, 141 Ct.Cl. 307. At this time, the Government cannot seriously argue that plaintiff was not re-retired in October 1946 when he was returned to the retired list of the regular Navy following his wartime service. But, as we will discuss below, in what status was plaintiff retired constitutes the real controversy between the parties.

We must agree with plaintiff that the legislative background of the February 1946 amendment to the Temporary Promotions Act of 1941, accomplished by P.L. 305, reveals an intent that re-retired enlisted men should benefit from having held temporary officer appointments just as do temporarily advanced permanent officers. We believe, however, that Congress intended to insure equal recognition and to obviate inequities in a special way. Prior to the enactment of P.L. 305, enlisted men who, like plaintiff, had

---

** Now 10 U.S.C.A. §§ 5442–5444, 5447–5449, 5597, 5787, 6151, 6326, 6488.

1. This Act is also known as Public Law 305, 79th Cong., 2d Sess.

served honorably and well in responsible officer positions would be returned to inactive duty as enlisted men and would have their higher temporary grades as honoraria only, with no pecuniary recognition of their service as officers. P.L. 305 was enacted to provide a monetary reward in recognition of the officer service of these enlisted men. It clearly accomplished this purpose for the plaintiff has, since his re-retirement, received pay based on the highest temporary rank held, although administered under generally applicable statutes rather than under the officer provisions of the 1942 Pay Readjustment Act.

We must disagree, however, with the plaintiff's suggestion that he was re-retired as an officer and is therefore entitled to the retired pay rate of paragraph 4, section 15. The *sine qua non* of the benefits of that portion of the 1942 Act is retirement *as* an officer since the statute speaks of *officers* "hereafter retired."

In the case of Jakway v. United States, Ct.Cl., 178 F.Supp. 307, decided July 13, 1959, which was concerned with whether or not a warrant officer who had served on active duty as a colonel was entitled to have his retired pay computed under paragraph 4, section 15, this court looked to the language of the statute under which the plaintiff was relieved from active duty to determine what his status was at that time. We decided that paragraph 4, section 15 required retirement *as* an officer and the statutes under which Jakway had been retired [2] told us that he had been retired *as* an officer.

The Temporary Promotions Act of 1941, the controlling statute in this case, provided machinery by which the armed services could temporarily advance personnel to officer rank when and as needed during wartime. Any recovery of retirement benefits by plaintiff for his officer service must be viewed in the light of that Act since it is only by virtue of

that Act that he held an officer appointment. P.L. 305 amended section 10 of the Act in this manner:

"Sec. 10(a) Personnel appointed or advanced under the authority of this Act may be continued in their temporary status during such period as the President may determine, but not longer than six months after the termination of war or national emergency or, in the case of reserve and retired personnel, not longer than the period herein specified or the date of release from active duty whichever is the earlier and in no case longer than six months after the termination of war or national emergency. Upon the termination of their temporary status such personnel on the active list of the Regular Navy and Marine Corps shall assume their permanent status and those of the retired list and of the respective Reserve Components, including the Fleet Reserve and Fleet Marine Corps Reserve, shall have, when returned to an inactive status, the highest grade or rank in which, as determined by the Secretary of the Navy, they served satisfactorily under a temporary appointment, unless entitled to the same or higher grade and rank pursuant to section 8 of this Act, as now or hereafter amended.

"(b) (1) Personnel of the retired list returned to an inactive status with higher rank pursuant to subsection (a) shall receive retired pay computed at the rate prescribed by law and applicable in each individual case but based upon such higher rank."

The language of the statute quoted above reveals three separate effects flowing therefrom. First, under no circumstances can a temporary promotion of a retired member persist beyond the final day of his active duty. Next, upon the

---

2. Sections 402(b), 409, Title IV, Career Compensation Act of 1949, 63 Stat. 802, 817, 823, now 10 U.S.C.A. §§ 1201–1206, 1209, 1210, 1215, 1401–1403 and §§ 1372, 1373.

termination of the temporary appointment, the service member resumes his permanent status if active, or is returned to the retired or inactive status previously held. Finally, his pay, when he is placed on or returned to the retired list, will be based on the highest rank held, if the Secretary of the Navy deems that he has served satisfactorily in that rank.

Since plaintiff's temporary officer appointment terminated by operation of law on the last day of his active service, he then reverted to the only other military status he had, viz., a retired, permanent chief quartermaster, in other words, an enlisted man. His advancement to and classification as a lieutenant commander on the retired list was a separate transaction occurring only because of the statutory allowance that he would have, after resuming inactive status, the highest temporary active rank held. It is factually clear that the reversion to inactive status and the advance on the retired list were not a single transaction. Regardless of the fact that it was attempted to accomplish them by a single set of orders, they are separate and distinct both in fact and under the terms of the statute.

Irrespective of the actual date on which the plaintiff was designated a lieutenant commander on the retired list, such designation could have had no efficacy until a formal determination of satisfactory service in that rank was made by the Secretary of the Navy. This is apparent from the statutory language providing for such executive approval. Although plaintiff was administratively designated an officer on the retired list on October 3, 1946, it was not until February 3, 1947, that the Secretary determined that the plaintiff had so served satisfactorily. There was, therefore, a four month hiatus between the termination of plaintiff's active duty as an officer and his advancement as such on the retired list. Moreover, the statutes required that he be returned to inactive status as an enlisted man, and then be awarded the higher officer rank.

Thus, we see that the only possible interpretation of the facts before us is that plaintiff was re-retired as an enlisted man and then advanced to officer status on the retired list in recognition of his temporary active service as an officer.

Section 10(b) (1) of the Act gives, we think, a further indication of the extent of the benefit which the Congress wished to confer through its enactment.

"Personnel * * * returned to an inactive status * * * pursuant to subsection (a) shall receive retired pay computed at the rate prescribed by law and applicable in each individual case but based upon such higher rank."

The fact that the word "but" is employed indicates that pay based on such higher rank contradicts or is in some way inapposite to the rate of pay prescribed by law, that they are not the same thing, in other words. If the legally prescribed rate of pay should be held to be the law generally applicable to persons retired as officers, there would be no purpose in indicating by a qualifying phrase that pay would be based on the highest temporary grade or rank held. And the conjunction "but" implies contradiction, exception, or conditions in opposition to each other. The 1946 amendment to the Act indicates to us a purpose to continue in application the basic retirement laws previously applicable to personnel recalled to duty, at the same time authorizing tangible recognition of the temporary service in a higher status.

This court looks closely at the wording of statutes concerning retirement and retired pay as is evident from a reading of some of our recent decisions. In Jakway v. United States, supra, the plaintiff, who completed his active service as a warrant officer but had previously served as a colonel, sought to obtain the benefits of paragraph 4, section 15, as does the plaintiff in this case. Jakway had been retired under the provisions of section 402(b), Title IV, Career Compensation

Act of 1949, supra. Section 409 of that Act provides:

"A member of the uniformed services who is retired pursuant to this title shall be retired in the rank, grade, or rating upon which his disability retirement pay is based or in such higher rank, grade, or rating as may be authorized by law at time of retirement."

Clearly, Jakway, whose disability pay was based on the pay of a colonel, was not retired as a warrant officer and then advanced to colonel. He was retired as a colonel as the statutes required and, accordingly, we held him to be entitled to the officer pay rate provided for in paragraph 4, section 15 of the Pay Readjustment Act of 1942.

Another case in which this court has looked to the language of the statutes to determine retired status is Seastrom v. United States, Ct.Cl., 177 F.Supp. 948, 950, decided November 4, 1959. The plaintiff, a permanent enlisted man, had served as a temporary warrant officer in the Navy. He was retired for disability under section 8(a) of the Temporary Promotions Act of 1941, supra. Seastrom sought to avoid the application of the Sales Statute, 29 Stat. 361, as amended 49 Stat. 487, 490 † which restricts the civilian activities of retired Navy officers and warrant officers. We held that the prohibitions of the Sales Act applied to him because of the wording of the statute under which he had been retired:

"An officer or enlisted man on the active list of the Regular Navy or Marine Corps, or an enlisted man of the Fleet Reserve or Fleet Marine Corps Reserve, who incurs physical disability while serving under a temporary appointment in a higher rank, shall be retired in such higher rank with retired pay at the rate of 75 per centum of the active-duty pay to which he was entitled while serving in that rank."

Seastrom was retired *as* a warrant officer and not as an enlisted man because the statute said that he should *be retired in* the higher grade, not advanced to it.

When we compare the wording of the statutes under which Jakway and Seastrom were retired with the language of the retirement provision of the Temporary Promotions Act of 1941 we note a crucial difference. As to Seastrom, section 8(a) of that Act provided that he should *be retired in* his warrant officer grade. Similarly, as to Jakway section 409 of the Career Compensation Act of 1949 provided that he should *be retired in* the rank of colonel on which his disability retired pay was based. But, section 10(a) of the 1941 Promotions Act, as it bears on the instant case, says that the temporary appointment will terminate and that plaintiff " * * * shall have, when returned to an inactive status, the highest grade * * * in which, * * * [he] served satisfactorily * * *."

The difference in meaning and effect between these two methods of accomplishing a release from active duty is significant and decisive. Had Congress intended that temporarily commissioned enlisted men in plaintiff's situation be retired as officers, we believe it would have said so as it did in the statutes applying to Jakway and Seastrom. But, instead of saying that plaintiff would be retired as an officer, the statute returned him to inactive status (which he had previously occupied as an enlisted man) and said he would then "have" the higher grade and emoluments flowing therefrom. We must conclude, therefore, that Congress intended Jones and others in his factual area to resume their status as retired enlisted men, and to then be granted a retired pay which recognized that, for a time, they had been called upon to assume greater responsibility and to discharge duties requiring higher skills.

† Now 10 U.S.C.A. § 6112.

Since the plaintiff could not have retired as an officer under the provisions of the applicable statute, he cannot qualify for retired pay pursuant to paragraph 4, section 15, of the Pay Readjustment Act of 1942, and, accordingly, recovery must be denied.

The plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted. The petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.