Davis, Judge,
delivered the opinion of the court:
In Gordon v. United States, 134 Ct. Cl. 840, 140 F. Supp. 263 (1956), this court ruled that, under the Pay Readjustment Act of 1942, 56 Stat. 359, 367-68, military officers who served before the end of hostilities in World War I, who were thereafter retired and recalled to active duty, and who were then “re-retired” after the passage of the Pay Readjustment Act were entitled to count, in computing their retired pay under that statute, the years they had spent on the retired list. See, also, Danielson v. United States, 121 Ct. Cl. 533, 102 F. Supp. 575 (1952); Carroll v. United States, 117 Ct. Cl. 53, 81 F. Supp. 268 (1948); Sherfey v. United States, 141 Ct. Cl. 307, 157 F. Supp. 936 (1958), and Field v. United States, 141 Ct. Cl. 312, 158 F. Supp. 580 (1958), cert. denied in both, 357 U.S. 926.
According to the petition, the present plaintiff’s decedent (together with a number of other officers) was in the same category as Major Gordon. When Captain Oleson was re-retired he was serving in that grade and receiving the basic active duty pay of such an officer with over 27 years of service. Thereafter, he was paid, under the 1942 Pay Readjustment Act, at the rate of 75 per cent of the active duty pay of an Army captain with over 21 years of service, rather than a captain with over 27 years’ service; his years on the retired list after his first retirement (in 1934) and before his recall to active duty (in 1941) were omitted for retirement pay purposes. After Gordon, he filed a claim in August 1958 with the General Accounting Office for the additional retirement pay. That agency paid the claim, under its ten-year statute of limitations (31 U.S.C. § 71a), back to August 1948.[1] The decedent then applied to the Army Board for the Correction of Military Records to correct his records to show his entitlement to retired pay on the basis of 27 (instead of 21) years of service, for the period from February 23, 1943 (when he was re-retired) to August 28, 1948 (the starting point of the General Accounting Office’s award).
*13 In March 1959, the Assistant Secretary of the Army approved the Correction Board’s action in decedent’s favor and directed:
1. That all of the Department of the Army records of VICTOR L. OLESON be corrected to show:
a. that as of 24 February 1943 he was credited for longevity pay purposes with over 27 years of service as computed under the Pay Readjustment Act of 1942 (Public Law 607, 77th Congress); and
b. that the Department of the Army pay to VICTOR L. OLESON or other proper person, or persons, all money found to be due as a result of the foregoing correction of military records.
These corrections were made and the Army Finance Department was directed to pay Captain Oleson. Before that was done, the General Accounting Office ruled (Decision B-137384, Sept. 11,1959, 39 Comp. Gen. 178) that payment was unauthorized because the Correction Board was without power to make an award which did not change the facts of the serviceman’s record. Captain Oleson then returned to the Correction Board for reconsideration. In April 1960, the Assistant Secretary modified his earlier action to direct:
1. That all of the Department of the Army records, including all military pay records, of VICTOR L. OLESON be corrected wherever appropriate, to show that he was re-retired on 24 February 1943, at which time he was credited for longevity pay purposes, in the computation under the Pay Readjustment Act of 1942 of his service for retired pay, with over twenty-seven years’ service.
2. That the Department of the Army pay to VICTOR L. OLESON or other proper person, or persons, all money found to be due as a result of the foregoing correction of military records.
The Army thereupon paid decedent, in July 1960, the sum of $1,288.44, which was the difference in his retired pay (from February 23, 1943 to August 28, 1948) due under the Secretary’s directive.
Later, the Comptroller General held (Decision B-143582, August 10, 1960), with relation to another claimant in the same class, that the Correction Board had no authority to make its determination in favor of Captain Oleson, and he, *14 was asked by tbe Army to refund tbe $1,288.44 in full. On bis refusal, tbe amount of $70 per month was withheld from his retired pay beginning January 1,1961; with some suspensions, the total sum was recouped as of October 31, 1964. This suit was begun on November 6, 1964, by plaintiff, as Captain Oleson’s surviving spouse and beneficiary, to recover the $1,288.44.
Defendant moves to dismiss the petition as barred by our six-year limitations statute and as failing to state a claim Upon which relief may be granted. There is no dispute that, under Gordon v. United States, supra, Captain Oleson’s retired pay should have been computed at the higher level from the time he returned to the retired list in February 1943. The Government’s position is, rather, that this court cannot now grant judgment for that pay and that the Correction Board could not do so either.
The limitations defense is plainly unavailable. Plaintiff’s claim in this court arose no earlier than the dates on which the Army withheld money from her husband’s retired pay, beginning in January 1961, and indeed may not have accrued at all until the withholding was complete on October 31,1964. This judicial claim is that $1,288.44 was improperly deducted from the decedent’s retired pay during that period, or, to put it otherwise, that because of the deductions the decedent was not paid the full amount of retired pay to which he was duly entitled from January 1961 to October 1964. The suit was brought well within six years of both of those dates and' is therefore timely. See, e.g., Baggett Transp. Co. v. United States, 162 Ct. Cl. 570, 573, 582, 319 F. 2d 864 (1963); The Baltimore & Ohio R.R. v. United States, 141 Ct. Cl. 128, 132, 158 F. Supp. 862, 864 (1958).
This brings us to Haislip v. United States, 152 Ct. Cl. 339, 296 F. 2d 469 (1961). The four plaintiffs in that combined, case were in the same situation as Captain Oleson — with one significant difference. The similarities are that they were all entitled, under the Gordon rule, to have their retirement pay recomputed with credit for their years on the retired list; the General Accounting Office had also given them this increased retirement pay back ten years, but no further; and the Correction Board had held them entitled to the increased. *15 pay for all periods subsequent to their re-retirement (after the Pay Readjustment Act of 1942). The great difference is that the services had not actually paid those plaintiffs for the earlier period (i.e., prior to the time covered by the GAO’s ten-year award of back pay) because the GAO had ruled (with respect to Captain Oleson) that the Correction Board was powerless to grant entitlement to this additional compensation. The Correction Board’s determination that those plaintiffs should be paid had therefore never been carried into effect. They never received the additional sums due under the Gordon rule. Unlike the present claimant, those plaintiffs did not sue for monies withheld from them during the six years before suit; instead, they asked in 1959' for retired pay which they should have had during the 1940’s and which they had never had. In the eyes of the law, their claim was either based directly on the retirement legislation which the court had interpreted in Gordon (i.e., the Pay Readjustment Act of 1942) or directly upon the unexecuted findings by the Correction Board that they were entitled to the extra money.
The Government raised the six-year statute of limitations, 28 U.S.C. § 2501, and the majority of the court agreed with that defense. The opinion held that, insofar as the claims were based directly on the substantive retirement legislation, they obviously arose in the 1940’s when the defendant failed to pay the full amount of retirement pay owing the .plaintiffs — much more than six years before the actions were commenced in this court. As for the claims founded on the Correction Board’s unimplemented action, the court thought that the Board’s “decision” did not give the plaintiffs any new judicial right they “had not had all along”, since no fact appearing in their military records was changed. The plaintiffs, the opinion said, could have filed suit as soon as the correct retirement pay was denied them in the 1940’s. “The Board’s decision was merely a legal conclusion, based on the law and the facts of record, no one of which was changed by the Board.” 152 Ct. Cl. at 343, 296 F. 2d at 471. In those circumstances, the court thought that to give the plaintiffs a judgment “would be in the face of the statute of limita *16 tions of six years on. suits in this court.” 152 Ct. Cl. at 344, 296 F. 2d at 471.
HaisUp, as the majority opinion clearly shows, was grounded squarely on this six-year limitations statute. The court was dealing with a claim which could have been brought directly to this court, and in which no intervention by the Correction Board was needed as a prerequisite to suit. The court also had before it plaintiffs who had never received the pay to which they were entitled, either directly or through a Correction Board proceeding*. In such a case, the court held, the Board’s “determination” or “decision” in favor of the claimant — left unimplemented by actual payment — fell short of creating a new cause of auction avoiding the six-year bar. After the time-bar had fallen on the original claim, this court could not implement the Board’s unexecuted holding. See, also, Friedman v. United States, 159 Ct. Cl. 1, 6-8, 23-24 (esp. fn. 20), 310 F. 2d 381, 384-85, 395 (1962), cert. denied, 373 U.S. 932 (1968); Morris v. United States, 163 Ct. Cl. 259 (1963), same case on the proofs, 171 Ct. Cl. 220 (1965).[2] But theHaislip opinion did not hold or suggest that a payment by the service itself to the claimant, in execution of the Board’s determination, would be illegal or improper. The court was at pains to leave that issue completely open: “Whether the Correction Board had or had not authority to pay plaintiff, we have not.” 152 Ct. Cl. at 344, 296 F. 2d at 471.
That is the precise question we now have before us— whether the payment to plaintiff’s decedent, as a result of the Correction Board action, was unauthorized, illegal, or improper. If so, the Army’s subsequent withholding of the $1,288.44 was correct; if not, the Army had no right to deduct that amount from the retired pay to which the decedent was entitled during the period from January 1,1961, to October 31,1964.
Despite the position of the Comptroller General, we see no *17 •adequate reason wby the Correction Board could not direct that tliis payment be made to Captain Oleson. The Board’s charter (the Act of August 2, 1946, 60 Stat. 812, 837, as amended, 10 U.S.C. § 1552) 'authorizes the Secretary, acting through a civilian board, to “correct any military record of that department when he considers it necessary to correct an error or remove an injustice”, and provides that the department may pay “a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another’s service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be.” The Comptroller General felt that the Board’s power was merely to correct, change, or supplement facts set out in the original record, but the statute refers, not to alteration of the facts in the record, but to a correction of “any military record” itself. A record which shows, erroneously, that an officer is credited, for retirement purposes, with only 21 years of service is inaccurate and can be corrected to show entitlement to 27 years, even though there is n,o change in any bare fact of the serviceman’s military career. Becords often embody and reflect legal conclusions, or the application of legal views to bare facts, and it is proper to say that such records are-corrected when the Board changes those parts of the record which incorporate the administrative conclusions as to the legal effect of the facts. In Captain Oleson’s case, for instance, the Army records, including military pay records, showed, before the Board acted, that he was to be paid his retired pay on. the basis of 21 years of service, and they also failed to say that he was re-retired in February 1943. Those records, including the pay records, were then corrected (as a result of the approval of the Board’s action) to show that he was re-retired in February 1943 and that he was credited, at that time, with over 27 years’ service in the computation of his retired pay. The hard facts remained as before but the Army’s conclusions from those facts, as embodied in its records, were materially altered.
We cannot consider that change as anything other than a correction in military records under 10 U.S.C. § 1552. The *18 broad terms of tbe statute coyer it. The legislation is remedial and to be liberally construed, rather than narrowly or technically. 40 Ops. Atty. Gen. 504, 508 (1947); 41 Ops. Atty. Gen. 203, 206, 208 (1954). Nothing in the legislative history forbids this result. On the contrary, that history tends to aid the conclusion that the Board can correct military records insofar as they comprise or mirror erroneous or mistaken legal views, although there is no change in the hard facts themselves. “[I]t is clear that the Correction Boards were initially authorized in 1946 to-provide an administrative substitute for the enactment of private bills for the correction of military or naval records.”’ Friedman v. United States, supra, 159 Ct. Cl. at 38, 310 F. 2d at 404; Ogden v. Zuckert, 298 F. 2d 312, 314-15 (C.A.D.C., 1961); 40 Ops. Atty. Gen. 504 (1947); 41 Ops. Atty. Gen. 12, 14 (1949); 41 Ops. Atty. Gen. 71, 73 (1951); 41 Ops. Atty. Gen. 203, 206-07 (1954). It would seem to follow that the Boards were given jurisdiction to change the legal conclusions imbedded in military records just as Congress could do, and had done, by private act.[3]
We conclude that the Correction Board and the Secretary-acted within their statutory authority in changing and correcting Captain Oleson’s records. When he was paid as a consequence of the Board’s determination, that payment was wholly lawful and proper under the specific statutory provision (added in 1951) authorizing the services to make payments due as a result of a correction in records (section 1552 (c)). Under the statute, too, that determination and the-payment, lawfully made, were “final and conclusive on all officers of the United States”, including the General Accounting Office (section 1552(a)).
This means, it is true, that, in cases in which the Correction Boards merely correct legal conclusions embodied in military records and payment is then made to the claimant-,, the Boards will afford a second forum, alternative or addi *19 tional to the courts, for relief of what would otherwise be •conventional judicial claims. The sweeping words of the statute permit that result, as does the Congressional purpose to enable the military departments, through these boards, to grant relief for errors and injustices of many and varied, kinds. So long as the records contain a mistake or an omission bearing on pay — whether factual or legal — we think that the Boards have authority to consider the matter and then to order payment if they make a correction calling for a monetary award.
To some it may he anomalous to hold that an officer who was paid as a result of a. Board determination (like Captain Oleson) can sue to recover the monies thereafter deducted, erroneously, to make up for that payment, while officers with the same kind of claim who received similar Board rulings but were never paid (e.g., Captain Haislip) are held barred by limitations. We see a meaningful distinction between the two groups, centering on the fact of payment in the one instance and the refusal to pay in the other. These claims are all of the monetary class which could be brought to this court without prior Board consideration, and for which the Board is merely an alternative or additional forum.. If the claim is of this type, a Board “determination” which has not been implemented by payment is inchoate, not final or binding; without payment, a Board’s “decision” of a pecuniary claim of this type is left hanging in the air since the goal of a monetary claim is payment. There being no final resolution of the monetary demand, Haislip considered that the Board’s determination had no operative effect upon the court’s jurisdiction or processes: the court had to deal with the controversy as if there had been no administrative consideration, and had to apply its own rules of jurisdiction and limitations. The Haislip majority felt that to accept the mere unimplemented “decision” of the Board would thwart the judicial statute of limitations Congress had established for this court. See, also, Morris v. United States, supra. Where payment is made, however,- and is then recouped — as in this instance — the case no longer involves the original claim but the validity of the executed payment. As pointed .out earlier in this opinion, there is no problem of a time-bar *20 since the recoupment occurred within the six years prior to suit. There is no thwarting of the Congressional limitation on our jurisdiction, and without erosion of that restriction we can accept the administrative payment of the claim as a final and valid act of the Army, within its jurisdiction and competence.[4]
Comparable distinctions based on the fact of payment are not unknown to the law applied by this court. For instance, in the field of freight transportation, the Government has customarily paid the bills submitted by the carriers and then recouped any asserted overcharges by deductions from later (and unrelated) payments. If a carrier, which was first paid and then suffered a deduction, brought a timely suit to recover the recoupment,, there would be no limitations problem even though the shipment which was the subject of the deduction was itself an old one. See Baggett Transp. Co. v. United States, supra; Baltimore & Ohio R.R. v. United States, supra. On the other hand, if the Government happened to fail to pay another carrier with the same kind of a claim (i.e., on the same type of shipment, at the same time, under the same tariff), that second carrier would be barred unless it filed a suit within the prescribed period from the accrual of the original claim,- if the second carrier waited until the first company sued, it would find itself far out of time. As here, the combination of payment plus recoupment makes the difference.
The grounds of defendant’s motion to dismiss are not well taken. The petition states a proper claim and is not barred by limitations. The motion is denied and the case is returned to the trial commissioner for further proceedings.
In accordance with the decision of the court that plaintiff would be entitled to recover the sum of $1,288.44, to which defendant has agreed, it was ordered on February 23, 1966, that plaintiff’s motion for summary judgment be granted and that judgment be entered for plaintiff for $1,288.44.

 Captain Oleson also filed a petition in this court which was dismissed by stipulation, on January 6, 3 90!), after the General Accounting Office had made its award. That petition in this court covered only the period after 1952.
After the General Accounting Office’s decision, Captain Oleson continued to be paid at the higher rate.

 On the other hand, where Correction Board action is a necessary prerequisite to judicial consideration of the claim, the court has ruled that the Board’s determination does give rise to the cause of action on which suit is brought. See, e.g., Friedman v. United States, supra, 159 Ct. Cl. at 8 ff., 310 F. 2d at 385 ff.; Schiffman v. United States, 162 Ct. Cl. 616, 319 F. 2d 886 (1963), Cf. Barnes v. United States, 163 Ct. Cl. 321 (1963); Lerner v. United States, 168 Ct. Cl. 247 (1964).

 In addition, the legislative background of the 1951 amendments, expressly-empowering the services to make payments on the basis of Board determinations, suggests that the Boards were not expected to adopt a technical or narrow conception of their jurisdiction. See the legislative materials referred to in Friedman v. United States, 141 Ct. Cl. 239, 257, 158 F. Supp. 364, 375. (1958), and Haislip v. United States, supra, 152 Ct. Cl. at 349-51, 296 F. 2d at 474-75 (dissenting opinion).

 Like tlie GAO, with its ten-year limitations period (31 U.S.C. § 71a), the Correction Boards have their own limitations period, separate from this court’s six-year statute. See 10 U.S.C. § 1552(b). There is no question that Captain Oleson filed a timely claim with the Board.