**Richard H. BRIDGMAN**

v.

**The UNITED STATES.**

**No. 378-66.**

United States Court of Claims.
July 17, 1968.

ON PLAINTIFF'S MOTION AND DE-
FENDANT'S    CROSS-MOTION
FOR SUMMARY JUDGMENT

DAVIS, Judge.

This is the unusual case in which the court must decide whether a serviceman can benefit from a Correction Board determination which is favorable to him. It is common ground that he is entitled to recover if we accept the Board's decision. The only question is whether that holding is sustainable.

The case concerns the amount of retired pay to which plaintiff was entitled for the span from October 9, 1946, to September 30, 1949. Because of the mutual agreements and concessions on these cross-motions for summary judgment, we can pare our statement of the relevant aspects of his military record. He served inactively as an enlisted man in the National Guard from April 1921 to April 1922 and again from October 1922 to September 1925. From that time to January 1933 he was an officer in the Regular Army on active duty. On January 31, 1933, he was retired for physical disability as a first lieutenant. Recalled to active duty in the World War II emergency, in September 1940, he served until October 8, 1946, when he was relieved from active duty as a colonel and returned to the retired list. He had then completed over 15 years' active service and over 24 years' total service (active and inactive). On re-retirement he was receiving the active-duty pay and allowances of a colonel with over 24 years' total service.

When he returned to retirement in October 1946 plaintiff was placed on the retired list as a first lieutenant, the grade he had held when recalled to active duty in 1940. From then until June 28, 1948, he was given retired pay at the rate of 75% of the active duty pay of a first lieutenant without World War I service but with over 15 years' and less than 18 years' service. See the Pay Readjustment Act of 1942, 56 Stat. 359, as amended. Effective June 29, 1948, he was advanced to colonel on the retired list and

---

Harry E. Wood, Washington, D. C., attorney of record, for plaintiff. Jeffrey M. Glosser, Washington, D. C., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

was paid retired pay (until September 30, 1949, the day before the effective date of the Career Compensation Act of 1949) at the rate of 75% of the active-duty pay of a colonel with over 15 years' service but less than 18 years. This increase in grade and retired pay came about because of Section 203(a) of the Act of June 29, 1948, 62 Stat. 1081, 1085, requiring the advancement of a retired officer who had served actively during World War II "to the highest temporary grade in which he served satisfactorily for not less than six months * * * as determined by the * * * Secretary."

Under the Career Compensation Act of 1949, 63 Stat. 802, Colonel Bridgman has received retired pay from October 1, 1949 (the effective date of the Act), as a colonel with over 22 years' service and not over 26 years, and 100% disability, i. e., at the rate of 75% of the basic pay of a colonel with such service. He does not in any way now challenge this pay or computation.[1] His entire stress is on the prior period from his re-retirement in October 1946 to September 30, 1949.

In 1960 plaintiff applied to the Army Board for Correction of Military Records for a correction to show his entitlement, for the time from October 9, 1946, to September 30, 1949, to the retired pay of a colonel with over 24 years of service. This change would alter his grade for part of this period (from first lieutenant to colonel, for the earlier portion) and his creditable service for the whole time (from more than 15 years to over 24 years).

On the Board's recommendation, the Secretary corrected all Army records to show that Colonel Bridgman was re-retired on October 8, 1946, "at which time he was credited for longevity pay purposes, in the computation under the Pay Readjustment Act of 1942, of his service for retired pay, with over twenty-four years service." Plaintiff thereupon demanded the additional retired pay to which he was entitled under this determination from October 1946 to September 30, 1949, and upon the defendant's refusal brought this action.

■ Plaintiff concedes, nay asserts, that on his uncorrected record the retired pay he actually received for October 9, 1946 to September 30, 1949 was computed in conformity with law. Defendant agrees, and there is no need to spell out the matter. As a non-World War I officer, plaintiff's interim periods of inactive duty on the retired list were properly excluded from his creditable service (see Gardner v. United States, 156 Ct.Cl. 488, 492, 493 (1962); Carroll v. United States, 81 F.Supp. 268, 270–271, 117 Ct. Cl. 53, 60–61 (1948)), and as a re-retiree before August 7, 1947, who did not have World War I service, he was not entitled to be paid as a colonel until June 1948 (cf. Sherfey v. United States, 157 F.Supp. 936, 939, 141 Ct.Cl. 307, 311 cert. denied, 357 U.S. 926, 78 S.Ct. 1372, 2 L.Ed.2d 1371 (1958); Carhart v. United States, 146 Ct.Cl. 479, 480 (1959)). (For present purposes, the significant fact is that plaintiff did not have World War I service and therefore was not entitled to have his years of inactivity on the retired list counted in making up his retired pay, prior to the Career Compensation Act.[2])

Just as it is plain that without the correction plaintiff could not recover, so it is clear that, if the Correction Board's and Secretary's actions in changing plaintiff's records are taken at face value, he is entitled to prevail. Everything thus turns on the validity and effectiveness of those determinations. They were made without a hearing on the basis of a simple application which asked for a correction in plaintiff's records of pay

1. In part, the pay he ultimately received and continues to receive for the period after October 1, 1949, came through a prior suit he filed in this court (No. 31–57), and the administrative settlement of that litigation.

2. The fourth paragraph of Section 15 of the Pay Readjustment Act of 1942, 56 Stat. 359, 368, provided that officers thereafter retired should receive credit, for retirement pay purposes, for inactive years on the retired list if (but only if) they had had service in World War I.

and accounts to show entitlement to retired pay from October 8, 1946, to October 1, 1949, as a colonel with over 24 years' service.[3] No reason for the request was given except that on the date of plaintiff's "last retirement" (October 8, 1946) he was receiving the active-duty pay of a colonel of over 24 years' longevity—and, as we have just seen, in law that was no reason at all for a change since his then active duty pay was not related to the retired pay to which he was entitled.[4]

The record of the Board's proceeding shows that it found (among other things not now important) that (i) on plaintiff's re-retirement "he was not credited for retirement pay purposes with inactive time spent on the Retired List prior to his recall to active duty"; and (ii) the Comptroller General had ruled that his office would follow the decisions of this court (Gordon v. United States, 140 F. Supp. 263, 134 Ct.Cl. 840 (1956); Sherfey v. United States, supra, 157 F.Supp. 936, 141 Ct.Cl. 307; Field v. United States, 158 F.Supp. 580, 141 Ct.Cl. 312 (1958); cert. denied in both *Field* and *Sherfey*, 357 U.S. 926, 78 S.Ct. 1372, 2 L.Ed.2d 1371 (1958)) "to the effect that officers retired prior to 1 June 1942, who served on active duty after retirement were released from active duty after 1 June 1942 and did not incur physical disability while serving on active duty subsequent to retirement were 're-retired' within the scope of the fourth paragraph of Section 15 of the Pay Readjustment Act of 1942 [the paragraph relating solely to such officers who had had World War I service] and entitled to the benefits granted by that paragraph and as a result, each officer was entitled to increased retired pay because of inactive time on the Retired List."

The Board then concluded that, in accordance with this decision of the Comptroller General, "the applicant [plaintiff] is entitled to creditable service for longevity pay purposes for the inactive time spent on the Army of the United States Retired List," and that the Army's failure to credit him with this inactive time "was in error and unjust." Accordingly, it recommended that plaintiff's records be corrected to show that on re-retirement in October 1946 he was credited for longevity pay purposes, "in the computation under the Pay Readjustment Act of 1942 of his service for retired pay," with over 24 years' service, and that the Army pay him "all money found to be due as result of the foregoing correction of military records." The Secretary followed suit and adopted this proposal.

It is inescapable, from this record of the proceedings and the Secretary's action, that the Board and the Secretary thought that Colonel Bridgman had had World War I service like Gordon, Sherfey, Field and the many others (see, e. g., Oleson v. United States, 172 Ct.Cl. 9 (1965)) who have been held entitled under the fourth paragraph of Section 15 of the Pay Readjustment Act of 1942 to count their inactive time on the retired list, prior to their World War II service, in making up their retired pay after re-retirement in or after World War II.[5] This is demonstrated by the Board's recitation of the Comptroller General's decision dealing with just such cases; the Board's conclusion that plaintiff is entitled under that decision to credit for his inactive time on the retired list; and the Board's and the Secretary's use of forms of proceeding and of action apparently

3. The application stated the number of years inaccurately but it is clear what was meant.

4. The active duty pay properly took account of his inactive years on the retired list while the statutes forbade those years from being taken into account in computing retired pay.

5. As already indicated, the fourth paragraph of Section 15 relates only to officers "who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law."

used regularly for such "World War I" cases alone.[6]

How this mistake was made we do not know. Plaintiff's application did not say he had had World War I duty, and his military records did not show any. Nothing else was before the Board, according to the record of its proceedings. It is agreed that, in fact, he had no such service. The truth seems simply to be that Colonel Bridgman's application was processed routinely but inadvertently as a *Gordon-Sherfey* type of case, though it was not.

■■ The problem thus narrows to the issue of whether this secretarial "correction of records" can stand even though it was indisputably based on no evidence at all. Perhaps if there were no judicial review of Correction Board determinations, claimants could take the advantage of egregious errors like this and rightly demand that the court accept the "correction" on its face without any examination. But it is now well settled that in many classes of cases the Board's actions are judicially reviewable—and retired pay is certainly in that category. See Friedman v. United States, 310 F.2d 381, 396–397, 400, 403–405, 159 Ct.Cl. 1, 26, 32, 37–40 (1962), cert. denied, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). We constantly scrutinize such Correction Board determinations adverse to the claimant, not only for errors of law but also to see whether they are supported by substantial evidence. Moreover, we have held that a Board action favorable to the serviceman but grounded in an erroneous interpretation of a statute is not binding and will be overturned. Russell v. United States, 314 F.2d 809, 161 Ct.Cl. 183 (1963).

■ It is a logical step to conclude, as we do, that a Correction Board factual finding which rests on no evidence at all can and should be overturned, and that the administrative determination, favorable to the claimant, which is tied to that totally unsupported finding should be rejected. Congress provided these boards "to correct an error or remove an injustice" (10 U.S.C. § 1552 (1964); see Oleson v. United States, supra, 172 Ct.Cl. 9, 17–18), not to act where there is no possibility whatever of error or injustice.[7] Elsewhere the law is very reluctant to accept a finding based on no evidence at all (cf. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654 (1960)). Given our rule that judicial review is available at the instance of the claimant, we see no indication that Congress wished to depart from that general postulate where the Government is the injured party. See Friedman v. United States, supra, 310 F.2d at 403–405, 159 Ct.Cl. at 37–40. We would need much more definitive words from Congress to be convinced that it meant to allow *any* Correction Board determination so unsupported.[8]

■ For this case it is enough to decide only the instance in which there is no evidence at all. We do not consider whether or not the same rule of "substantial evidence" as governs findings adverse to a serviceman applies as well to those in his interest, or whether the principles of judicial review of factual matters are precisely the same where the Government seeks it as when invoked by a claimant. We pass only upon the exact issue before us.

---

6. Plaintiff's name, the date of his re-retirement, and the number of his total years of service are inserted in forms which seem otherwise boiler-plated.

7. Indeed it would discriminate against other officers in the same class to grant plaintiff the special treatment the Board mistakenly gave him. That unequal treatment would be an error and an injustice, and by granting it the Board would be creating error and injustice.

8. We do not read the possible dictum in Russell v. United States, supra, 314 F. 2d at 811, 161 Ct.Cl. at 186, that "the facts found by the Correction Board are final" as intended to include cases in which there was no evidence at all to sustain the finding.

Because the board and secretarial actions in plaintiff's case were squarely based on a crucial finding unsupported by any evidence, we cannot accept those actions, and they cannot be used in this court to support plaintiff's claim. Without them he has no case, as he admits. He is therefore not entitled to recover. The defendant's motion for summary judgment is granted, the plaintiff's is denied, and the petition is dismissed.