**Dunstan ABEL**

v.

**The UNITED STATES.**

**No. 348–66.**

United States Court of Claims.

March 20, 1970.

**340**

Samuel T. Ansell, Jr., Washington, D. C., for plaintiff, Ansell & Ansell, Washington, D. C., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

DAVIS, Judge.

This case concerns the pecuniary liability of an Air Force officer for the loss of Government property. Congress has provided (10 U.S.C. § 9832) that the "Secretary of the Air Force may prescribe regulations for the accounting for Air Force property and the fixing of responsibility for that property," and also (10 U.S.C. § 9835(a) that, in order to determine such responsibility, "Under such regulations as the Secretary of the Air Force may prescribe, any officer of the Air Force designated by him may act upon reports of surveys and vouchers pertaining to the loss, spoilage, unserviceability, unsuitability, or destruction of or damage to property of the United States under the control of the Department of the Air Force." In connection with action by such a designated officer "upon reports of surveys and vouchers" with respect to lost or useless property, the statute (10 U.S.C. § 9835(b)) goes on to say: "Action taken under subsection (a) [of § 9835, *supra*] is final, except that action holding a person pecuniarily liable for loss, spoilage, destruction, or damage is not final until approved by the Secretary or an officer of the Air Force designated by him."

Under this statutory authority, the Air Force has promulgated regulations relating to property responsibility and pecuniary liability. Among the individuals charged with responsibility for Government property are those with "supervisory responsibility"—"A person who exercises supervision over property received, in use, in transit, in storage or undergoing modification or repair is responsible for the selection of qualified personnel who will perform duties under his control, the proper direction of such personnel, and the issuance of any instructions to these personnel that may be required to insure compliance with existing regulations governing property * * *." AFM 67–1, Amendment No. 8, March 1955, Vol. IV, Sec. 2, par. 1.

As for monetary liability, the regulation (AFM 67–1, Amendment 8, *supra*, par. 2) declares that it "may be assessed against commanders or other supervi-

sory personnel if there is evidence that loss, damage or destruction of public property was due to: * * * (3) Negligence, including the following acts: * * * (b) Improper attention to security measures. (c) Failure to acquaint personnel under his control with the proper care and security of supplies."[1]

Under these provisions, plaintiff, Lt. Col. Dunstan Abel, was held jointly liable, along with two others, while on active duty—he has since retired—for lost property at Barksdale Air Force Base, and he now sues to recover the sum of $3,670.93 deducted over many months from his pay on account of this determination. His ground is that the final administrative decision was arbitrary, capricious, and unsupported by substantial evidence. Both sides have moved for summary judgment on the administrative record.

The first Air Force body to go into the matter formally was a board of officers which held hearings in March 1959, heard several witnesses, and made recommendations. Plaintiff appeared as a respondent together with other officers; he had the services of assigned legal counsel.[2] The Board found Lt. Col. Abel (and others) negligent, but concluded that "there is not enough individual culpability to assess pecuniary liability against anyone"; an administrative reprimand was recommended for plaintiff and two other officers, disciplinary punishment for another officer, and "disciplinary action equivalent to military court-martial" for a civilian employee of the Air Force.

The major general who was the appointing and convening authority affirmed the Board's findings and recommendations, except that he held plaintiff and two others (a second officer and the civilian employee) pecuniarily responsible, jointly, for the losses, and he also ordered disciplinary action for plaintiff (rather than simply an administrative reprimand). According to the statute (§ 9835(b), *supra*), the imposition of pecuniary liability had to be approved by the Secretary of the Air Force or his designee. Approval was given by the Chief of the Strategic Air Command, who appears to have been one of the Secretary's designees. On appeal by plaintiff, this action was confirmed by the same officer and also by the Commander of the Air Force Accounting and Finance Center (who was the ultimate authority designated by the Secretary), except that the amount to be recovered from the three persons held jointly liable was reduced from $12,956.21 to $11,012.78.[3]

Without deciding the exact extent to which we are bound by all the factual findings of the Board and of the reviewing officers, we can accept, for our decision in this case, the following facts as determined in the administrative process: A contract for the construction of docks at Barksdale Air Force Base was terminated (late in 1956 or early in 1957) and materials brought on the Base early in 1956 for performance of that project were left there by the contractor at several locations. The Air Force took over responsibility from the contractor for this material on February 21, 1957, but without taking an inventory and without securing it adequately. The material had been left in considerable disorder, in a state of deterioration, not properly safeguarded, and subject to pilferage. Plaintiff was at that time the Base Director of Materiel, with supervi-

---

1. A later version of this regulation, issued in May 1960, is identical for our purposes. AFM 67-1, Amendment 38, May 1960.

2. Plaintiff does not now attack the Board's procedures or the rights he was given before that tribunal. We shall assume, therefore, that he was accorded all the procedural rights and protections to which he was entitled, both before the Board and before the reviewing officers.

3. One-third ($3,670.93) was collected from plaintiff's pay. Apparently the other two-thirds were collected from the other officer and the civilian.

sory authority over the personnel (the Base Supply Officer and his assistants) charged with direct responsibility for accepting and accounting for the material. Lt. Col. Abel first became aware on or about March 15th—some three weeks after the Air Force assumed responsibility for the items—that the storage conditions of the material were inadequate to prevent corrosion, warping, and twisting. On March 26th, he informed his front office (the Deputy Base Commander) that his own shop (the Office of the Base Director of Materiel) would monitor the inventory and safeguarding of the material. However, despite this assurance and "in spite of an expressed concern that there might be a shortage" of the dock material, plaintiff failed to have an inventory made, though he did take limited steps to safeguard the goods from pilferage. He ceased to be Base Director of Materiel on July 12, 1958. A later inventory, not taken until December 1958, disclosed a substantial shortage which led to the appointment of the Board of Officers and the proceedings imposing pecuniary liability upon plaintiff.

We accept, too, the administrative conclusion that Lt. Col. Abel was negligent in failing to have an inventory made after he found out, on March 15, 1957, that one had not previously been drawn up. In the words of the Secretary's designee, the Commander of the Air Force Accounting and Finance Center, denying plaintiff's appeal: "* * * the facts of record support the prior determination that the [plaintiff] as Base Director of Materiel, after becoming aware that the property involved was accepted without inventory, negligently failed to direct and assure that an inventory was promptly taken."

Negligence of this type could well support military discpline or an administrative reprimand for a supervising officer, regardless of whether his carelessness led to the loss of property or not. But the issue here is the different one of imposition on the officer of pecuniary lia-

bility for such a loss. The Air Force regulations authorize that sanction, in this instance, only where the dereliction actually resulted in or led to a loss. This is made clear by AFM 67–1, *supra*, "Pecuniary Liability", which provides that liability may be assessed against supervisory personnel only "if there is *evidence* that loss, damage or destruction of public property *was due to*" the officer's negligence or fault (emphasis added). Proof of causation is therefore essential, required by the very directive which warrants the placing of pecuniary liability on the supervisory officer.

With respect to this fundamental element of causation, the Board of Officers declared, in plaintiff's case, no more than that "Failure on the part of Lieutenant Colonel Abel to insure the inventory contributed to the shortage and later [*i. e.* after March 15, 1957] misuse of the dock materials." This summary conclusion was affirmed by the reviewing officers. The Commander of the Air Force Accounting and Finance Center said simply: "Such negligence [plaintiff's negligence in failing to have an inventory taken after the matter came to his attention] substantially contributed to the loss incurred by the Government."

We pass over, without deciding, the point that these conclusions are too summary, too unsupported by specific evidence of loss of identified material attributable directly to this plaintiff's failure to act, to stand as proper findings that any shortage at all was in fact due to his conduct. Even if we accept the statements for what they say on their face, we cannot agree that plaintiff can be held pecuniarily liable. The fundamental defect which stops us is that the claimant obviously cannot be held chargeable for the losses, plainly substantial, which were incurred before March 15th, but the administrative bodies made no attempt to pin his liability solely to the losses occurring after that date. They neither made an apportionment of any kind, nor did they really address themselves to the problem—and on

this record we are unable to make any division for ourselves.

The undisputed administrative finding, as we have stated, is that plaintiff became aware of conditions "on or about" March 15, 1957, but the Air Force had accepted property responsibility on February 21st, three weeks before. There is no hint of a suggestion that Lt. Col. Abel, who was not directly in charge of accounting for government property but was only a supervisor, should have become aware of the situation any earlier.[4] It follows inexorably that his negligence after March 15th could not possibly have contributed to losses which took place prior to March 15th. Neither the Board nor the reviewing officers purported to hold him responsible for events before March 15th; although the whole of the loss was put, jointly, on his shoulders, the administrative determinations as to him are phrased in terms of his responsibility from March 15th forward.

The decisive discrepancy is that the findings themselves show, overwhelmingly, that a substantial part of the loss must have happened before the critical date of March 15th. The terminated contractor left the material in considerable disorder at dispersed locations on the base. The Board also found: "Evidence has brought out the fact that the material on 21 February 1957 was in a state of deterioration, had not been properly safeguarded, and had been subject to pilferage. Moreover, a reasonable doubt exists as to whether all of the MB–4 dock material was ever physically present on the premises of Barksdale Air Force Base." At the time of the transfer on February 21st, base officials (not plaintiff) were advised that the stuff was not then being properly safeguarded and that the then-existing deterioration would get progressively worse unless something was done. Although some pilferable materials were placed in a warehouse, the structural steel was stacked and left in open storage. Some of the corrugated siding (and perhaps other material) had been left by the contractor in an industrial area used by other contractors in the vicinity of a railroad spur on the base. This material was later found to have been used, improperly, in other projects, either by the Air Force itself or by these contractors. The findings do not say when all of this misuse occurred, but it is likely that at least a part of it occurred before March 15th.[5]

Added up, these findings show that: (1) it is doubtful that all of the material (for the loss of which plaintiff has been held) ever came onto the base; (2) it is not at all unlikely that some of the portion which did come on the base had been lost or taken before February 21st; (3) the part which was actually transferred on that date was already deteriorated and was subject to progressive deterioration, and would therefore have deteriorated considerably by March 15th; (4) the part transferred was also improperly safeguarded, open to further pilferage from that time on, and in such locations and condition that illegal takings were not unlikely; and, finally, (5) it is probable that a part of this material was in fact taken and misused before March 15th. The inescapable conclusion is that a large part of the loss must have occurred before plaintiff's negligence on and after March 15th.

Accordingly, it is impossible, on the administrative findings themselves, to conclude that Lt. Col. Abel's fault contributed to all of the loss—the property which could not be accounted for in March 1959 when the Board reported—

4. Other officers and a civilian were held responsible in the administrative proceedings for derelictions beginning with February 21st, and, as already indicated, pecuniary liability was also imposed on one other officer and the civilian.

5. The entire record negatives the inference that *all* the misuse occurred after March 15th.

for which he has been held liable. The Board does not appear to have considered this difficulty, and gives no explanation of its general and summary finding of causation, probably because it recommended that no pecuniary liability be imposed and therefore did not have to center on what part of the loss was attributable to this plaintiff.

At the higher echelons, it was suggested in another connection,[6] in staff recommendations to the officers with power to review, that if an inventory had been made promptly after March 15th the Government could have investigated any missing items at that time, sought assistance from the contractor in locating or accounting for them, and been able to protect its rights by recourse against the contractor for shortages and deterioration. But even on these assumptions it is the thinnest of speculation to infer that the Air Force would have been able to recoup, in kind or in money value, all or nearly all the property already lost, taken, or damaged before March 15th. The gaps in the chain of causation are too great. The contractor, for instance, would have no liability for, and no knowledge of, events after February 21st, when the property was transferred to the Air Force. As for the prior period, it requires a series of giant inferences, based (so far as we can tell) on nothing substantial in the record or findings, to think that the contractor's aid would prove very helpful in recovering all the missing items, or that the contractor could be pinned down financially for the whole shortage. The Air Force's own negligence at the time of the transfer—for which plaintiff was not responsible—would seem a major obstacle to ascertaining the pre-February 21st loss and holding the contractor for it. To use the phrasing of the Air Force regulation, this pyramid of speculation—as to what might possibly have ensued if Lt. Col. Abel had had the inventory made soon after March 15th—cannot be deemed "evidence" that the whole loss "was due to" his negligence. AFM 67-1, *supra*.

The only permissible conclusion, therefore, is that there is no evidence at all, and certainly no substantial evidence, supporting the attribution of the *entire* loss to plaintiff. *See* Koppers Co. v. United States, 405 F.2d 554, 558, 559, 186 Ct.Cl. 142, 148–149, 150–151 (1968). That determination must fall. The Government points to the statute (10 U.S.C. § 9835(b), *supra*) saying that the decision of the officer acting upon reports of survey is "final", but that ambiguous word seems used in this connection to refer to finality within the Air Force hierarchy rather than to a determination binding on the courts. *Cf.* Brownell v. Tom We Shung, 352 U.S. 180, 184–185, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956); Shaughnessy v. Pedreiro, 349 U.S. 48, 51, 75 S.Ct. 591, 99 L.Ed. 868 (1955); Heikkila v. Barber, 345 U.S. 229, 233, 73 S.Ct. 603, 97 L.Ed. 972 (1953).[7] In any event, it requires much stronger language, or a powerful showing from legislative history (lacking here), for us to find that Congress intended, in a statute relating to pecuniary liability of an individual to the Government, to bar judicial review even where the crucial administrative findings are supported by no evidence or no substantial evidence. *Cf.* Estep v. United States, 327 U.S. 114, 121–125, 66 S.

---

6. In answer to plaintiff's contention, on administrative appeal, that nothing would have been gained by his directing an immediate inventory upon his becoming aware of the situation.

7. This reading accords with the phrasing of the section. The officer's action under subsection (a) "is final, except that action holding a person pecuniarily liable for loss, spoilage, destruction, or damage is not final until approved by the Secretary or an officer of the Air Force designated by him."

Ct. 423, 90 L.Ed. 567 (1946); Shaughnessy v. Pedreiro, *supra;* Brownell v. Tom We Shung, *supra;* Wellman v. Whittier, 104 U.S.App.D.C. 6, 259 F.2d 163, 169 (1958); Bridgman v. United States, 399 F.2d 186, 190, 185 Ct.Cl. 133, 139–140 (1968).

Excising the administrative finding that the whole loss was assignable to plaintiff, there is no way for us to apportion—assuming the disputable premise that we have that power. Under the regulation, the Government has the burden of proving that the supervisory officer held liable was in fact causally responsible for the loss for which he is to be mulcted. The officer does not have the burden of showing that he should not be held liable.[8] Here, the Government has not made its proof, at least as to the loss prior to March 15th, and, even if we are free to do so, we cannot piece together, with any semblance of accuracy, a part of the full loss which has been sufficiently proved to be due to plaintiff's fault. The materials for such an apportionment are not available in the record or findings, and the possibilities of error are too great. Neither the Air Force nor this court can make any valid division on this record.[9]

The result is that the whole determination of liability must be over-

turned since an untainted portion cannot be carved out—just as courts can set aside, in federal personnel-removal cases, adverse administrative actions which rest on an inseparable mixture of good and bad grounds. *Cf.* Deviny v. Campbell, 90 U.S.App.D.C. 171, 194 F.2d 876, 879, cert denied, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952); Clark v. United States, 162 Ct.Cl. 477, 484–485, 486–487 (1963); Greenway v. United States, 175 Ct.Cl. 350, 357–358, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966); Hankins v. United States, 193 Ct.Cl. 32, 38–39 (1968); Kandall v. United States, 186 Ct.Cl. 900, 936 (1969); Kowal v. United States, 412 F.2d 867, 873–874, 188 Ct.Cl. 631, 643 (1969). We do not send the case back to the Air Force for further evidentiary hearings because it has had its opportunity to make its case fully and has failed in its proof. There is no reason to give it another chance to present evidence.

The plaintiff is entitled to recover all the sums withheld from his pay, amounting to $3,670.93. The defendant's motion for summary judgment is denied, and the plaintiff's is granted. Judgment is entered for the plaintiff for $3,670.93.

---

8. Contrast R.S. § 1304, 10 U.S.C. § 872—not involved here because it relates only to military supplies issued to an officer—which requires the officer to show to the Air Force's satisfaction that a deficiency or damage was not occasioned by any fault on his part. The same is true of the portion of AFM 67–1, *supra*, imposing pecuniary responsibility on Air Force personnel for loss or damage to public property issued to them for their exclusive personal use.

9. Plaintiff has been forced to pay only one-third of the loss—the other two individuals being held for the rest—but pecuniary liability was imposed jointly and severally. It would be capricious and discriminatory to hold now that this one-third is a proper portion attributable to plaintiff's share of the post-March 15th loss. The others each paid no more, we infer, although their negligence began from the time of the transfer of the property. Moreover, there is no ground whatever for picking out one-third as a proper proportion.