**Rex S. MORGAN, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 325–85C.**

United States Claims Court.

July 7, 1989.

Richard L. Swick, Washington, D.C., atty. of record, for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

### OPINION

NAPIER, Judge:

This matter is before the Court on cross-motions for summary judgment. After consideration of the motion papers and oral

argument, the Court denies plaintiff's motion and grants defendant's motion.[1]

*Facts*

Plaintiff first entered the Armed Services as an enlisted man in the United States Army on September 8, 1942. He served as an enlisted man until July 15, 1943, at which time he was commissioned and served on active duty as a reserve officer until July 8, 1949. On July 9, 1949, he was commissioned in the Regular Army and served as a commissioned officer in the Regular Army from July 9, 1949 until March 31, 1961, at which time he resigned his regular commission and was appointed as a Major in the United States Army Reserve.

He served in the United States Army Reserve in inactive status until he was appointed to the grade of warrant officer and entered on active duty October 10, 1974. While serving in an inactive status, plaintiff was promoted to the United States Army Reserve grade of Lieutenant Colonel effective July 19, 1969. Plaintiff was not in a position to obtain retirement benefits as a reserve officer.

Plaintiff was placed in the retired reserve as a Lieutenant Colonel on November 18, 1971, without entitlement to to retirement benefits. He remained on active duty as a warrant officer until he was released from active duty on February 27, 1979. On February 28, 1979, plaintiff requested that he be retired in the grade of Lieutenant Colonel. He was released from active duty on February 27, 1979, and retired in the grade of Lieutenant Colonel effective March 1, 1979. Shortly thereafter the Retirement Branch of the Army Military Personnel Center became aware of an error in plaintiff's retirement grade.[2]

On July 30, 1979, the Chief of the Retirement Branch requested a legal opinion from the Administrative Law Division, Office of The Judge Advocate General as to plaintiff's retirement status. On August 13, 1979, the Chief, Military Personnel Law Branch, Administrative Law Division, rendered a legal opinion. Although there was no indication of any wrongdoing at that time, JAG advised that plaintiff's retirement order issued on February 28, 1979, *"may* be revocable under the fraud exception to the doctrine of administrative finality." (Emphasis in original). JAG stated that "before any revocation action can be taken, a factual determination * * * must be made as to the existence of fraud." JAG informed the Retirement Branch that to find fraud, it must be shown that:

a. [plaintiff] made a material false representation;

b. that he knew the representation was false;

c. that the representation was made with an intent to defraud;

d. that the defrauded party (the Army) relied on the representation; and

e. that this reliance was to the detriment of the defrauded party (the Army).

JAG further advised that:

in more general terms, fraud is present when it is shown that there was *an af-*

---

**1.** While defendant has styled its motion as one for summary judgment, presumably because matters were submitted on brief outside the pleadings, the Court has treated the motion as a motion to dismiss for lack of jurisdiction. The Court did not consider matters outside the pleadings presented by defendant. It did, however, consider matters outside the pleadings presented by plaintiff.

**2.** Plaintiff had been promoted to the rank of Lieutenant Colonel in the Army Reserve, not on active duty, on June 19, 1969. Since he never served on active duty in this rank, he was not eligible to retire as a Lieutenant Colonel. 10 U.S.C. § 3961(b) provides as follows:

§ 3961. General rule

(a) The retired grade of a regular commissioned officer of the Army who retires other than for physical disability, and the retired grade of a reserve commissioned officer of the Army who retires other than for physical disability or for nonregular service under chapter 67 of this title, is determined under section 1370 of this title.

(b) Unless entitled to a higher retired grade under some other provision of law, a Regular or Reserve of the Army not covered by subsection (a) who retires other than for physical disability retires in the regular or reserve grade that he holds on the date of his retirement.

(As amended Dec. 12, 1980, Pub.L. 96–513, Title V, § 502(18), 94 Stat. 2910.)

*firmative attempt to mislead* the authorities taking action, and *not just a failure to correct* an erroneous impression. (Emphasis added.)

On October 19, 1979, an investigating officer was appointed pursuant to Army Regulation (AR) 15-6 to conduct an informal investigation into the circumstances surrounding plaintiff's retirement.

The investigation was conducted from January 9, 1980, until January 16, 1980. Thereafter, the investigating officer rendered a report in which the investigating officer concluded that plaintiff perpetrated fraud.

On April 7, 1980, plaintiff was notified of a pending adverse action against him to revoke his retirement in the grade of Lieutenant Colonel. Plaintiff, through counsel, submitted a brief in rebuttal to the findings of the investigating officer.

In his rebuttal to the investigation, plaintiff argued there was no evidence to support the investigating officer's finding of fraud and that he had not been given a specific allegation concerning material false representation. On January 23, 1981, the Commanding General, United States Army Military Personnel Center, approved the findings that plaintiff's retirement had been fraudulently accomplished.

Plaintiff's retirement in the grade of Lieutenant Colonel was retroactively revoked and he was retired in the grade of warrant officer. He was required to repay the difference between the retired pay of a Lieutenant Colonel and a warrant officer.

On February 22, 1981, plaintiff filed suit in the United States District Court seeking a temporary restraining order and a permanent injunction directing the Army to retain him in the retired grade of Lieutenant Colonel. His suit was dismissed without prejudice based on a failure to exhaust his administrative remedies. Thereafter, he sought relief from the Army Board for Correction of Military Records. By memorandum dated January 21, 1982, he was informed that his application had been denied. He filed his complaint in this Court on May 30, 1985.

## Discussion

The regulation which governs revocation of retirement status is AR 635-100. It provides:

> In the absence of any showing of fraud, the retirement exhausts the power of the President and the Secretary of the Army, and the record of executive action *cannot* be revoked or modified to make retirement related to another statute, even though the case is one to which more than one statute properly applied at the time of retirement.

AR 635-100, para. 4-35.

The record in this case reveals no material false representations made by plaintiff. It also reveals that the officials making the determination of plaintiff's retirement did not rely upon any representations by plaintiff. Plaintiff merely requested that he be retired as a Lieutenant Colonel. He argues, therefore, that the Government cannot and did not make a showing of fraud. He further alleges that since his retirement could be revoked pursuant to AR 635-100 only upon a showing of fraud, the investigating officer sought to manufacture a finding of fraud. He further produced an affidavit from the individual who processed his request for retirement. The affiant stated that plaintiff did not procure his retirement through fraud and that at the time of retirement he left the decision of his retirement grade to her.

Understandably, plaintiff's brief is replete with references to alleged irregularities in the revocation proceedings and his desire to prove his good character. He has supplied numerous affidavits attesting to his good character, e.g., Ambassador Walter Annenberg, General Milnor Roberts, General Henry Mohr, and others. He alleges irreparable harm to his reputation and argues that he has been stigmatized by a finding that he obtained his retirement in the grade of Lieutenant Colonel by means of fraud.

Nevertheless, the focus of plaintiff's argument is misdirected and he fails to support the proposition that the Court has jurisdiction to decide his case.

■ Plaintiff's argument misses the underlying premise of the regulation. Judge Philip Nichols, writing for the Court of Claims in *Jamerson v. United States*, 185 Ct.Cl. 471, 401 F.2d 808 (1968), held that where a promotion is contrary to law, it does not need to be revoked since there is no entitlement to a benefit from what is, in fact, an administrative error.

The *Jamerson* Court concluded:

The plaintiff here was not promoted in his active duty capacity and never served in the rank or received the pay and benefits of a Lieutenant Colonel while on active duty. *The question in this case is whether the plaintiff was legally promoted and, if he was, whether his promotion was legally revoked. We hold that plaintiff was not legally promoted and the purported revocation merely reflected the situation that, in law, already existed.* (Emphasis added.)

*Jamerson*, 185 Ct.Cl. at 474, 401 F.2d 808.

The Court noted that if plaintiff had been promoted in his active duty status a different result may have occurred:

Had plaintiff been promoted in his active duty status this would be a different case. He never served in the rank of Lieutenant Colonel nor received any benefits of that rank. He was not demoted. Because he was ineligible for promotion he is not entitled to the retired rank of Lieutenant Colonel. We hold that his retention on active duty was proper but his "promotion" was contrary to law and ineffective, thus it did not need to be revoked. It was an administrative action not supported by the facts or the law, and plaintiff is not entitled to benefit from what is, in fact, an administrative error. *Bridgman v. United States, ante* [185 Ct.Cl.] at 133, 399 F.2d 186 (1968). The procedural regularity of the Air Force's attempts to revoke the "promotion" is therefore not a matter we need investigate."

*Jamerson*, 185 Ct.Cl. at 478, 401 F.2d 808.

The provision which establishes the jurisdiction of the United States Claims Court is that portion of the Tucker Act now codified as 28 U.S.C. § 1491(a)(1):

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

In order, "to maintain a claim in this court, other than on a contract, a plaintiff must show that money presently is due from the United States because money has been improperly paid, property has been taken by the Government, or a particular provision of law confers a right to be paid a certain sum." *Mack v. United States*, 225 Ct.Cl. 187, 190–91, 635 F.2d 828, 831 (1980); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

It has been consistently held by our appellate courts that if a Constitutional provision, statute or regulation is used to invoke this Court's jurisdiction, it must mandate compensation by the Government for the damage sustained. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009.

■ Without a mandate which can fairly be interpreted as allowing an award of money damages, this Court cannot grant relief. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009; *Austin v. United States*, 206 Ct.Cl. 719, 723, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Generally, a claimant who asserts entitlement to money from the United States based on a statute or regulation granting him the right, expressly or by implication, to reimbursement, can properly come before this Court if the claim is arguable. *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 125, 340 F.2d 663, 667, *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965). In this case, however, no statute or regulation entitles plaintiff to retired pay in the grade of Lieutenant Colonel since his retirement in that grade was erroneous. He

can have no entitlement where the erroneous " 'promotion' was contrary to law and ineffective, * * * it did not need to be revoked * * * and [he] is not entitled to benefit from what is, in fact, an administrative error." *Jamerson*, 185 Ct.Cl. at 478, 401 F.2d 808. Thus, absent an entitlement, this Court lacks jurisdiction.

Paragraph 4–35, Army Regulation 635–100, upon which plaintiff relies for his argument that the Government must show fraud in order to revoke or modify his retirement status, does not purport to give plaintiff any right to retirement in a grade other than that to which he was entitled by statute. To the extent that a regulation may purport to give individual rights beyond those provided for by statute, it is not valid. *See Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

### Conclusion

Plaintiff was never entitled to the retired rank of Lieutenant Colonel. His promotion was contrary to fact and law and, thus, ineffective. Revocation was not required. Therefore, the Court must dismiss for lack of jurisdiction. Since the Court lacks jurisdiction, issues involving the propriety of the revocation proceeding and the finding of fraud are not addressed, except as mentioned in paragraphs 13 and 14 above.